# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHANNON AGOFSKY,<br><br>        Plaintiff,<br><br>    v.<br><br>BUREAU OF PRISONS, *et al.*,<br><br>        Defendant. | Civil Action No. 23-1511 (TSC) |

### MEMORANDUM OPINION

Plaintiff Shannon Agofsky sues the Bureau of Prisons ("BOP"), its Director and the Regional Director for its North Central Regional Office, and his Acting Complex Warden for violations of the Administration Procedure Act ("APA") and his First Amendment rights. Plaintiff is incarcerated at the Federal Correctional Complex at Terre Haute ("FCC Terre Haute") in Terre Haute, Indiana. He filed a Complaint on May 25, 2023, ECF No. 1, and a Motion for Preliminary Injunction on June 8, 2023, ECF No. 5. Before the court are Plaintiff's Motion for Preliminary Injunction and Memorandum in Support, ECF No. 6 ("Pl.'s Mot."), and Defendants' Motion to Transfer, ECF No. 16 ("Defs.' Mot."), which is opposed. *See* Mem. in Opp'n to Mot. to Transfer, ECF No. 18 ("Pl.'s Opp'n"). For the reasons set forth below, the court will GRANT Defendants' Motion to Transfer. Accordingly, the court will not reach Plaintiff's Motion for a Preliminary Injunction in deference to the decision of the transferee court.

### I.      BACKGROUND

Plaintiff claims that Defendants refused to process his request to place his wife on his visiting list "solely on the basis" that he and his spouse—whom he met and married during his incarceration—had no relationship prior to his incarceration. Compl. ¶ 11; Pl.'s Mot. at 1, 6–7.

As relevant to the Motion to Transfer, Plaintiff argues that BOP's refusal violated the APA by applying a prior relationship requirement, previously applicable only to an inmate's friends and associates, to immediate family members arbitrarily and without notice and comment. Pl.'s Mot. at 1, 5–7; *compare* 28 C.F.R. § 540.44(a) (directing BOP staff "to compile a visiting list for each inmate after suitable investigation" which may include "members of the immediate family," including an inmate's spouse, who are to be placed on the list "absent strong circumstances which preclude visiting"), *with* 28 C.F.R. § 540.44(c) (directing that the "visiting privilege ordinarily will be extended to friends and associates having an established relationship with the inmate prior to confinement"). According to Plaintiff, "BOP's new policy categorically bars visits by inmates' spouses who did not know them before they were incarcerated, and also bars visits by inmates' children and siblings born after those inmates' incarceration." Pl.'s Mot. at 1.

Defendants contest that the final decision imposed a prior relationship requirement on visitation requests by immediate family members, and deny that BOP modified the substantive regulation. Defs.' Mot. at 1–2. They argue that the decision instead "merely upheld the discretion of prison officials to inquire about the existence of a prior relationship as a factor in evaluating Agofsky's request based on safety considerations applicable to him." *Id.* at 2. Defendants claim that inquiry was consistent with the underlying regulation. *Id.* at 3. Plaintiff argues that the plain text of the regulation, and BOP's statement during a 2003 rulemaking that "[t]he prior relationship requirement does not apply to immediate family members," bars expansion of the requirement making a prior relationship a prerequisite for visitation by an immediate family member. Pl.'s Opp'n at 3, 5–6; Visiting Regulations: Prior Relationship Requirement, 68 Fed. Reg. 10656, 10658 (Mar. 6, 2003). Plaintiff also argues that whether BOP's request regarding his prior relationship with his spouse is "framed as a denial or a request

for more information," it improperly applied a prior relationship requirement that BOP knew he could not satisfy, thereby effectively denying his request. Pl.'s Opp'n at 9.

## II. LEGAL STANDARD

A case may be transferred to another venue "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The moving party "bears the burden of establishing that transfer of the action is proper." *Smith v. Yeager*, 234 F. Supp. 3d 50, 55 (D.D.C. 2017) (quoting *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001)). Defendants must make two showings to justify transfer: (1) that the action "might have been brought" in their choice of forum, and (2) that the private and public "interest factors" weigh in favor of transfer. *Ctr. for Env't Sci., Accuracy & Reliability v. Nat'l Park Serv.*, 75 F. Supp. 3d 353, 356 (D.D.C. 2014); *Stern v. Fed. Bureau of Prisons*, 515 F. Supp. 2d 153, 155 (D.D.C. 2007). District courts "retain broad discretion in balancing the asserted convenience and fairness to the parties." *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 3 (D.D.C. 2006) (citing *Sheraton Operating Corp. v. Just Corp. Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997)).

## III. ANALYSIS

### A. <u>Where the Action Might Have Been Brought</u>

An action "might have been brought" against a federal defendant where (1) "a defendant in the action resides;" (2) "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated;" or (3) a "plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1); *Nat'l Park Serv.*, 75 F. Supp. at 356. Because the court finds that Plaintiff resides in the Southern District of Indiana, and no real property is involved in this action, venue is proper in that district and the court need not reach the alternative bases. Plaintiff is currently housed in the Special

Confinement Unit at FCC Terre Haute, a special housing unit for inmates under a death sentence. Pl.'s Mot. at 6; Defs.' Mot. at 4.  For venue purposes, a prisoner "resides" where he is incarcerated.  *See In re Pope*, 580 F.2d 620, 622 (D.C. Cir. 1978) (per curiam) (citation omitted); *Jordan v. US Bureau of Prisons*, No. 21-cv-614-CKK, 2022 WL 579442, at *6 (D.D.C. Feb. 25, 2022).  Plaintiff therefore resides in Terre Haute, which is located in the Southern District of Indiana.  Venue exists in the proposed transferee district.

Plaintiff does not concede that venue would be proper in the Southern District of Indiana. Pl.'s Opp'n at 14 ("Even assuming that venue would be proper in the Southern District of Indiana, these considerations weigh in favor of keeping the case in this District . . .").  He contends he had "good reason to believe he could not have brought this case in the Southern District of Indiana," pointing to a "virtually indistinguishable" case brought and later voluntarily dismissed by another death row inmate at FCC Terre Haute.  *Id.* at 15; *see also* Compl. ¶ 25; Compl., *Troya v. Hurwitz*, No. 2:18-cv-311 (S.D. Ind. July 10, 2018), ECF No. 1.  In that case, a similar set of defendants named in their official capacities denied that venue was properly asserted in the Southern District of Indiana.  Pl.'s Opp'n at 15 (citing Am. Answer of Official Capacity Defs. at 4 ¶ 2, *Troya v. Hurwitz*, No. 2:18-cv-311 (S.D. Ind. May 20, 2019), ECF No. 44).

Defendants are correct that *Troya* is distinguishable.  Unlike the Complaint here, Troya's complaint asserted individual capacity claims for monetary damages under *Bivens*.  Mem. in Reply ISO Mot. to Transfer at 4, ECF No. 19 ("Defs.' Reply").  Troya asserted venue in the Southern District of Indiana, relying on 28 U.S.C. § 1391(b)(2).  Compl. ¶ 2, *Troya v. Hurwitz*, No. 2:18-cv-311 (S.D. Ind. July 10, 2018), ECF No. 1.  That provision governs suits against individuals for money damages.  In contrast, actions "in which a defendant is an officer or

employee of the United States or any agency thereof acting in his official capacity or under color of legal authority" are governed by 28 U.S.C. §1391(e)(1). In *Troya,* the government, responding on behalf of the official-capacity defendants, appropriately denied that subsection 1391(b)(2) conferred venue over the official capacity defendants. Defs.' Reply at 3–4. As Defendants here explain, "that denial was not an assertion that venue was improper for official-capacity claims in the Southern District of Indiana, but that it was improper under 28 U.S.C. § 1391(b)(2) as alleged by Troya." *Id.* at 5 (internal quotations omitted). Consequently, the government has not "pull[ed] the rug out from under" Plaintiff by requesting transfer to an appropriate transferee court. Pl.'s Opp'n at 16.

## B.    **Private and Public Interest Factors**[1]

At the second step of the transfer analysis, the court considers several factors related to the private and public interest. Here, three of the private interest factors weigh in favor of transfer, two weigh against, and one is neutral. One of the three public-interest factors tips in favor of transfer, one weighs slightly against, and the other is neutral.

---

[1] In *Starnes v. McGuire*, the D.C. Circuit articulated five factors courts should consider when deciding whether to transfer a case brought by a prisoner incarcerated outside of the District of Columbia. 512 F.2d 918, 929–31 (D.C. Cir. 1974). Those factors include: (1) the prisoner's difficulty communicating with counsel; (2) the challenge of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed with which the case can be resolved; and (5) whether the case involves a national policy issue that may require the testimony of policymakers. *See id*. The second through fourth factors are addressed in the parties' briefing insofar as they overlap with the private and public interest factors discussed below, though neither party explicitly addressed the *Starnes* factors. The threshold question of whether this case concerns a "national policy issue"—as opposed to the implementation of such a policy, *see Huskey v. Quinlan*, 785 F. Supp. 4, 6–7 (D.D.C. 1992)—prevents the court from evaluating the fifth factor. The court will assume without deciding that Plaintiff's suit involves a national policy issue and nonetheless hold that transfer is appropriate where the private and public interest factors weigh in favor of transfer.

As a threshold matter, the parties dispute whether BOP changed its policy at all. *Supra* at 2–3.[2] Plaintiff contends that BOP implemented a new policy that expands Section 540.44(c)'s prior relationship rule for friends and associates so that it also applies to immediate family members covered by Section 540.44(a). Pl.'s Mot. at 1. Defendants counter that BOP's decision "did not state that a prior relationship was a prerequisite for a spouse to be permitted to visit, but only that a prior relationship was a factor that can be considered as part of the Warden's exercise of discretion to approve or deny visitors." Defs.' Mot. at 11–12; *see also* Decl. of Todd Royer ¶ 9, ECF No. 16-2 ("I have regularly denied visitation requests for spouses . . . if there appears to be a security or safety risk, and whether or not the spouse had a prior relationship with the inmate (i.e., one that pre-dates incarceration) is relevant to that assessment.").

In determining whether agency practice has changed, this court "independently review[s] the administrative record." *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 26 (D.D.C. 2019). Official agency action, statements by agency officials, and agency correspondence may be informative in this inquiry. *See Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 924–29 (D.C. Cir. 2017); *Am. Bar Ass'n*, 370 F. Supp. 3d at 26–33. Consequently, without the complete administrative record, this court is not equipped to rule on that question. And to the extent the answer to that question determines where the claims arose, and whether this case involves a national policy decision, *Starnes v. McGuire*, 512 F.2d 918, 928 (D.C. Cir. 1974), the court will assume without deciding that Defendants have not shown those factors to weigh in favor of transfer, *cf. Yeager*, 234 F. Supp. 3d at 55. The court nonetheless concludes that transfer is warranted.

---

[2] The court is not required to accept Plaintiff's legal conclusions—including whether BOP altered its policies—as true. *Black Lives Matter D.C. v. Trump*, 544 F. Supp. 3d 15, 28 (D.D.C. 2021), *aff'd sub nom. Buchanan v. Barr*, 71 F.4th 1003 (D.C. Cir. 2023).

1.  <u>Private interest factors</u>

The private interest factors the court considers when deciding whether to transfer a case include: "(1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of witnesses, particularly if important witnesses may actually be unavailable to give live trial testimony in one of the districts; and (6) the ease of access to sources of proof." *Bergmann v. U.S. Dep't of Transp.*, 710 F. Supp. 2d 65, 72 (D.D.C. 2010).

i.  *The parties' choice of forums*

With regard to the first factor, courts typically accord "substantial deference" to the plaintiff's choice of forum. *Id.* But the court gives "substantially less deference when the forum preferred by" a plaintiff "is not his home forum." *Jordan*, 2022 WL 579442, at *6 (internal quotation omitted). For the reasons explained above, Plaintiff's home forum is the Southern District of Indiana, not this District.

Courts also give less deference to the plaintiff's forum choice when "most of the relevant events occurred elsewhere." *Bergmann*, 710 F. Supp. 2d at 72 (quoting *Greene v. Nat'l Head Start Ass'n*, 610 F. Supp. 2d 72, 75 (D.D.C. 2009)).[3] The weight of Plaintiff's choice is "weakened" where—as here—"there is an insubstantial factual nexus between the case and the plaintiff's chosen forum." *Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 192 (D.D.C. 2012) (quotation omitted). Plaintiff argues that his choice of forum warrants deference even though it is not his home forum because it is a forum with substantial

---

[3] At this juncture, the court perceives a distinction between evaluating where "most of the relevant events occurred" (the test for evaluating Plaintiff's forum choice) and where "the decision-making process occurred" (the test for determining where Plaintiff's claims arose). In this posture, the court can determine the former from the pleadings, but, for the reasons explained above, cannot determine the latter without the administrative record.

connection to the controversy.  Pl.'s Opp'n at 17.  He argues that the Complaint "centers around BOP decision-making on matters of systemwide policy that occurred at headquarters in D.C.," and that the final agency decision was made in Washington, D.C.  *Id.*  Defendants argue that, outside of the fact that the final agency decision was issued by the BOP's Central Office in Washington D.C., the District of Columbia has few if any factual ties to this case.  Defs.' Mot. at 22.

Defendants have the better argument.  Even if Plaintiff prevails on his argument that BOP constructively amended its regulations, he admits that the Bureau did not "formally announce a revision to Section 540.44(a)" in its decision regarding his visitation request.  Pl.'s Opp'n at 4 n.1; Defs.' Reply at 3.  He argues it was Terre Haute's Warden who required proof of a prior relationship, contravening BOP's systemwide regulations.  Pl.'s Opp'n at 5.  Plaintiff contends that BOP's Regional Director and Central Office "explicitly endorsed and adopted the Warden's response."  *Id.*  But on that theory, the decision to change the regulation was initially made in Terre Haute, by the Warden, not by national policy makers in Washington who merely "endorsed" his decision.  *See id.*  "While undoubtedly some APA claims may be brought in this District by plaintiffs residing in other jurisdictions, once challenged, there commonly must be more of a connection to this District than the axiomatic denial of the third stage of an administrative appeal by the BOP Central Office."  *Jordan*, 2022 WL 579442, at *7.  It is "settled law" in this District that "mere involvement on the part of federal agencies, or some federal officials who are located in Washington D.C. is not determinative."  *State v. U.S. Army Corps of Engineers*, 304 F. Supp. 3d 56, 64 (D.D.C. 2018) (quoting *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25–26 (D.D.C. 2002)).  "[I]nstead, there must be a 'real connection between the District of Columbia and this litigation' that goes beyond the presence of federal

agency officials who are 'generally regulating and overseeing the [administrative] process.'" *Id.* (quoting *Shawnee Tribe*, 298 F. Supp. 2d at 26) (alteration in original). On this record, Plaintiff has not shown more than general regulation and oversight by BOP when it "affirmed the Warden's demand for proof of prior relationship." Pl.'s Opp'n at 5.

By contrast, Defendants argue that their choice of forum is more closely tied to the factual allegations and claims in this case. Defs.' Mot. at 23. For the reasons explained above, the court agrees. Defendants' choice of forum also weighs in favor of transfer because the proposed transferee district is Plaintiff's home forum. *Supra* at 3–4. While the first factor weighs against transfer, the second weighs more heavily in favor.

      ii.      *Where the claims arose*

"In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009). If the administrative record ultimately shows that BOP implemented a new policy allowing BOP staff to consider prior relationships among immediate family members—when they could previously only consider a prior relationship for friends and acquaintances—Plaintiff may well persuade the court that the relevant decision to constructively amend BOP's regulations occurred at BOP headquarters in Washington, D.C. Pl.'s Mot. at 1, 18–19; *see Royer v. Fed. Bureau of Prisons*, 934 F. Supp. 2d 92, 99, 104 (D.D.C. 2013) (transfer inappropriate in APA challenge where inmate pleaded BOP policy effectively amended existing rules and "issues of national policy or decisions made by national officials" were relevant); *Accurso v. Fed. Bureau of Prisons*, No. 17-cv-2626-APM, 2018 WL 4964501, at *1–2 (D.D.C. Oct. 15, 2018) (transfer inappropriate where plaintiff challenged national policy classifying Buddhist meditation objects as congregate, rather than personal, religious items and Warden

made "straightforward decision based on the classification scheme devised by BOP policymakers" which did not involve the "exercise of discretion by the Warden or involve the application of policy to circumstances unique to Plaintiff.").

But if Defendants ultimately show that the relevant regulation did not abrogate local wardens' discretion to consider a prior relationship in evaluating security concerns raised by immediate family members, the Warden's discretionary decision applying BOP regulations to Plaintiff's circumstances would likely locate the claims in the proposed transferee district. *See Jordan*, 2022 WL 579442, at *7; *cf. Accurso*, 2018 WL 4964501, at *2. For the reasons explained above, the court cannot rule on the predicate question on this record and will assume without deciding that this factor weighs against transfer. *Supra* at 6.

     iii. *Convenience of the parties, witnesses, and ease of access to sources of proof*

Taking the last three private interest factors together, Defendants argue that the convenience of the parties and witnesses and the ease of access to sources of proof are not relevant because the court's review "will likely be confined to an administrative record that has already been developed." Defs.' Mot. at 24 (internal quotation omitted). Plaintiff has requested a hearing on his Motion for Preliminary Injunction, and the government argues that if a hearing is held, holding it in the proposed transferee district where most witnesses work and reside would be more convenient. Mot. for Prelim. Inj. at 2, ECF No. 5; Defs.' Mot. at 24. Defendants also note that if Plaintiff is required to appear before this court, it would cause a "tremendous financial burden to transport him, with the highest level security designation," from the Southern District of Indiana to this District. Defs.' Mot. at 24; *see also Metcalf v. Fed. Bureau of Prisons*, 530 F. Supp. 2d 131, 135 (D.D.C. 2008) ("[G]iven the difficulty of transferring plaintiff for purposes of pursuing this litigation, the Court concludes that transfer to the United States District

Court for the Southern District of Indiana is both convenient for the parties and is in the interest of justice.").

Plaintiff agrees that the court's review will likely be confined to the administrative record and that any future hearing or trial is unlikely. Pl.'s Opp'n at 20. He asks the court to afford these factors "little weight" and to disregard Defendants' burden arguments. *Id.* He argues that if additional fact discovery is necessary, "relevant witnesses and evidence are likely to be in Washington, D.C., where BOP decision-making with regard to systemwide policy and Plaintiff's request took place." *Id.* But Plaintiff contradicts this position by requesting a hearing and seeking to "cross-examine Mr. Royer regarding his declaration and related issues," and to "put on additional evidence to dispute the factual contentions in the declaration" if the court considers it. Pl.'s Opp'n at 7 n.5. Royer is the Camp Administrator of the Terre Haute Complex and presumably resides in or near Terre Haute. Persuasive authority in this District holds that "[t]he most critical factor to examine under 28 U.S.C. § 1404(a) is the convenience of the witnesses." *Michigan Welfare Rts. Org. v. Trump*, 600 F. Supp. 3d 85, 111 (D.D.C. 2022). The court thus finds that the convenience of the parties and witnesses weighs in favor of transfer. *See id.*; *see also Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 48 (D.D.C. 2006) (even if testimony from national policy makers becomes relevant, "any inconvenience to [the government] is offset by the fact that they [are] the party requesting the transfer"). The court agrees with the parties that access to proof is irrelevant or neutral. *See Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 271 (D.D.C. 2011) ("[I]n this digital age of easy and instantaneous electronic transfer of data, the Court does not find that the 'ease of access to sources of proof' factor carries any weight in the transfer analysis.").

  2. <u>Public interest factors</u>

 The public interest factors include: (1) the transferee forum's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Bergmann*, 710 F. Supp. 2d at 75. The strong local interest in deciding this controversy in the Southern District of Indiana weights these factors in favor of transfer.

 The first factor is neutral because "all federal courts should have the requisite familiarity with federal law." *Defs. of Wildlife v. Jewel*, 74 F. Supp. 3d 77 (D.D.C. 2014) (citing *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1175 (D.C. Cir. 1987)); *see also W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 101 (D.D.C. 2013) ("Judges in both districts are presumed to be equally familiar with the federal laws governing this dispute, and thus this factor is not germane since no state law claims are at issue.). Defendants argue that the proposed transferee court "might be more familiar with this particular APA case only because nearly all inmates, housed at Terre Haute Complex like Agofsky, file their grievances with the court in the Transferee District, and therefore that Court is used to handling each specific circumstance related to inmates at Terre Haute Complex." Defs.' Mot. at 25. Plaintiff argues that no local or unique circumstances are raised by his suit. Pl.'s Opp'n at 21. While it is true that courts in this District consider "whether one circuit is more familiar with the same parties and issues or related issues than other courts," *State*, 304 F. Supp. 3d at 68, it appears that two iterations of the "virtually indistinguishable" suit by Daniel Troya were brought in both the Southern District of Indiana and this District. Defs.' Reply at 4–6. While the proposed transferee court may be more familiar with potential witnesses who live and work at FCC Terre Haute and the procedures that govern the complex, the court cannot say that the transferee court is more familiar with these parties and these issues.

With regard to the second factor, the court is not moved by the purported faster resolution in this court versus the Southern District of Indiana. See Pl.'s Opp'n at 21. While Plaintiff is correct that the median time from filing to disposition for civil cases in the Southern District of Indiana is greater than this court's median time of 4.7 months, the gap is not as wide as Plaintiff suggests. *See* U.S. District Court— Federal Court Management Statistics, September 2023, available at https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0930.2023.pdf (median time to disposition for civil cases in Southern District of Indiana 9.6 months). "Such statistics, stripped of any context, do not tell the court much about the relative congestion and complexity of the districts' respective dockets." *Accurso*, 2018 WL 4964501, at *3. Nor do they consider the particular docket of this court and its upcoming trial calendar. Nonetheless, the court acknowledges that this factor weighs against transfer.

Finally, the third and "most importan[t]" public interest factor favors transfer. *Bourdon v. United States Dep't of Homeland Sec.*, 235 F. Supp. 3d 298 (D.D.C. 2017). As a general matter, courts have "a strong interest in having plaintiff's claims 'resolved in the locale where they arise'" and so look to the location "of the operative events." *Treppel v. Reason*, 793 F. Supp. 2d 429, 439-40 (D.D.C. 2011) (quoting *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996)). That remains true even where, as here, a plaintiff invokes federal law or argues that a national policy is at stake. *See, e.g.*, *City of W. Palm Beach v. United States Army Corps of Engineers*, 317 F. Supp. 3d 150 (D.D.C. 2018); *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 49 (D.D.C. 2006). Courts in this District have transferred cases challenging both conditions of incarceration and those conditions' underlying policies to the facility's district, reasoning that while the "existence of a national policy issue . . . is a factor to be considered," where a "Plaintiff raises claims 'related to his particular circumstances,'" it is

primarily "the *implementation* of policy . . . at issue," and "venue is more appropriately laid" in the district of incarceration. *Huskey v. Quinlan*, 785 F. Supp. 4 (D.D.C. 1992) (citing *Starnes*, 512 F.2d at 929).

Courts consider a wide variety of factors to determine whether a controversy is local in nature, including "where the challenged decision was made; whether the decision directly affected the citizens of the transferee state; the location of the controversy, . . . whether the controversy has some national significance; and whether there was personal involvement by a District of Columbia official." *Bourdon*, 235 F. Supp. 3d at 308. Defendants argue that Plaintiff's injuries arose in the proposed transferee district, and that the security considerations underlying whether Plaintiff's spouse may visit him raise safety and security threats that are clearly relevant to the transferee district. Defs.' Mot. at 26. Plaintiff argues that "this is a case largely about policymaking by D.C.-based officials that has potentially national implications," and therefore the third factor "tips sharply against transfer." Pl.'s Opp'n at 22 (quoting *Stewart v. Azar*, 308 F. Supp. 3d 239, 249 (D.D.C. 2018)).

Plaintiff's argument rests on the premise that BOP officials wrought a wholesale change to BOP regulations. But, as explained above, the court cannot assess whether BOP changed its practice without evaluating the administrative record. *Supra* at 6. Regardless, it is clear that Plaintiff's requested remedy will affect the Warden's discretion in conducting investigations that impact the safety and security of the communities surrounding FCC Terre Haute and the complex itself. Defs.' Mot. at 18, 21, 26. It is equally clear that Plaintiff's injuries arose in Terre Haute, and that his requested remedy will be felt in Terre Haute. *See Bourdon*, 235 F. Supp. 3d at 309 ("Plaintiff asks this Court to compel action—the approval of Plaintiff's petition for his wife—that would occur in Florida."). As explained above, Plaintiff has not demonstrated

that officials residing in the District of Columbia were personally involved in the challenged decision. *See Jordan*, 2022 WL 579442, at *7 (requiring "more of a connection to this District than the axiomatic denial of the third stage of an administrative appeal by the BOP Central Office"); *see also State*, 304 F. Supp. 3d at 64. Taken together, these factors weigh in favor of a local controversy, and the court weighs this most important factor toward transfer.

\*     \*     \*

The D.C. Circuit has warned courts to "examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). On this record, the court is not persuaded that the requisite ties to this District outweigh those to the transferee court *even if* Plaintiff ultimately proves that Defendants instituted a national policy change. The court has carefully weighed the private and public interest factors and finds that while the balance is not heavily tilted, it nonetheless weighs in favor of transfer.

Finding that this case could have been brought in the Southern District of Indiana and that the private and public interest weighs in favor of transferring the case there, the court will grant Defendants' motion to transfer. Accordingly, the court will not address the merits of Plaintiff's Motion for Preliminary Injunction and will deny the motion without prejudice to it being refiled in the transferee court. *See Bourdon*, 235 F. Supp. 3d at 309.

## IV.   CONCLUSION

For the reasons above, the court will GRANT Defendants' Motion to Transfer, ECF No. 16, and DENY without prejudice Plaintiff's Motion for Preliminary Injunction, ECF No. 5. A corresponding Order will accompany this Memorandum Opinion.

Date: February 2, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge