UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SHANNON AGOFSKY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-00051-JPH-MKK |
| | ) |
| BUREAU OF PRISONS, | ) |
| COLETTE S. PETERS, | ) |
| ANDRE MATEVOUSIAN, | ) |
| STEVEN KALLIS, | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION**

Shannon Agofsky, a death-row inmate at the United States Penitentiary in Terre Haute, Indiana, married a German citizen while he was incarcerated. After the Bureau of Prisons denied his request to allow visits, Mr. Agofsky brought this case challenging that denial under the Administrative Procedure Act. Dkt. 1. He seeks preliminary injunctive relief that would vacate and reverse that denial. Dkt. [33]. Because on this record Mr. Agofsky has not shown some likelihood of success on his claims that the Bureau of Prisons violated the Administrative Procedure Act, his motion for a preliminary injunction is **DENIED**.

**I.
Facts & Background**

The parties have filed administrative records and other documentary evidence, the relevant parts of which are uncontested. *See* dkt. 6; dkt. 43.

1

Neither party requested an evidentiary hearing, *see* dkt. 41, so these facts are based on that designated evidence.

Shannon Agofsky is incarcerated in the Special Confinement Unit ("SCU") at the United States Penitentiary in Terre Haute, Indiana. Dkt. 43-12; dkt. 44-1 at 2. The SCU is a maximum-security unit for inmates who have been sentenced to death, including Mr. Agofsky, who was sentenced to death in 2004 for killing another federal inmate. Dkt. 44-1 at 1–2. Mr. Agofsky also has a Bureau of Prisons ("BOP") disciplinary record for assault, disruptive conduct, possessing a dangerous weapon, and rioting. *Id.*

In December 2019, while incarcerated in the SCU, Mr. Agofsky married German citizen Laura Rettenmaier—now Laura Agofsky—in a telephonic ceremony. Dkt. 6-1; dkt. 6-2. Mr. Agofsky did not follow the BOP's requirement to seek permission before marrying. Dkt. 44-1 at 3; *see* 28 C.F.R. § 551.13 ("A federal inmate confined in a Bureau institution who wants to get married shall submit a request to marry."). Ms. Agofsky then began planning to visit Mr. Agofsky. Dkt. 6-1 at 1.

The BOP's visitor regulation requires that proposed visitors be approved onto a visiting list. *See* 28 C.F.R. § 540.44. That regulation provides that "immediate family," including a spouse, "are placed on the visiting list, absent strong circumstances which preclude visiting." *Id.* § 540.44(a) "Friends and associates," however, must have had "an established relationship with the inmate prior to confinement" unless an exception is approved. *Id.* § 540.44(c). When the BOP amended that regulation in 2003, its commentary explained

2

that "[t]he prior relationship requirement does not apply to immediate family members." 68 Fed. Reg. 10656-01. The BOP also follows a Program Statement on visitors that says "[w]hen deemed appropriate, background checks may also be completed on immediate family members." Dkt. 43-2 at 6. Each BOP institution must supplement that Program Statement with local procedures, and under Terre Haute's supplement, "immediate family members must be verified by the U.S. Probation Officer on the inmate's Presentence Investigation Report." Dkt. 43-4 at 2.

In May 2020, Mr. Agofsky filed a grievance requesting approval for Ms. Agofsky to visit him. Dkt. 43-6 at 2. The SCU Unit Team denied Mr. Agofsky's visitation request, explaining that the Agofskys had to "prove that [they] had a relationship prior to incarceration" or receive an exception from the Warden. *Id.* Mr. Agofsky appealed to the Warden, who responded that he "must approve any exception to [the] prior relationship requirement," and he was waiting on more information. *Id.* at 2–3. Mr. Agofsky then appealed to the Regional Director and the Office of General Counsel, both of which upheld the Warden's response. Dkt. 43-7; dkt. 43-8.

Mr. Agofsky brought this case on May 25, 2023, in the District for the District of Columbia, alleging that the BoP's actions violated the Administrative Procedure Act ("APA"). Dkt. 1. The case was transferred to this district in February 2024, dkt. 23, and Mr. Agofsky then filed a motion for a preliminary injunction under Federal Rule of Civil Procedure 65, requesting that the Court

3

"vacate[ ] and reverse[ ] Defendants' denial" of Mr. Agofsky's visitation request, dkt. 33.

## II.
## Preliminary Injunction Standard

Injunctive relief under Federal Rule of Civil Procedure 65 is "an exercise of very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021). To obtain such extraordinary relief, the party seeking the preliminary injunction carries the burden of persuasion by a clear showing. *See id.*; *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Determining whether a plaintiff "is entitled to a preliminary injunction involves a multi-step inquiry." *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chicago*, 56 F.4th 437, 446 (7th Cir. 2022). "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Id.* "If these threshold factors are met, the court proceeds to a balancing phase, where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell*, 990 F.3d at 545. This "involves a 'sliding scale' approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). "In

the final analysis, the district court equitably weighs these factors together, seeking at all times to minimize the costs of being mistaken." *Cassell*, 990 F.3d at 545.

### III.
### Analysis

The Court's analysis begins and ends with one of the threshold requirements for obtaining a preliminary injunction—whether Mr. Agofsky has shown some likelihood of succeeding on the merits of his claims. *See Lukaszczyk v. Cook County*, 47 F.4th 587, 598 (7th Cir. 2022) (observing that likelihood of success on the merits "is often decisive."). Mr. Agofsky argues that he's likely to succeed on his APA claims (1) because the BOP has "constructively amended" its visiting regulation to require a prior relationship for immediate family without following the proper procedures, (2) because the visit denial was arbitrary and capricious, and (3) because the visit denial violates the First Amendment. Dkt. 33-1 at 16–29. The BOP responds that its actions were consistent with its visiting regulation and did not violate the First Amendment. Dkt. 44 at 13–19.[1]

#### A. Constructive Amendment

"The APA establishes the procedures federal administrative agencies use for 'rule making,' defined as the process of 'formulating, amending, or repealing

---

[1] The BOP briefly argues that the Court lacks subject matter jurisdiction because regulation of "inmate visitation is committed to agency discretion by law." Dkt. 44 at 14. The Seventh Circuit, however, has held that this rule is not "a limit on subject matter jurisdiction." *Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 275 (7th Cir. 2017); *accord Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020).

a rule.'" *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 95 (2015). Legislative rules—rules that "have the force and effect of law"—must be issued through a notice-and-comment process that allows public participation and requires the agency to "consider and respond to significant comments." *Id.* at 96. Interpretive rules, by contrast, do not require notice and comment because they merely advise the public of the agency's interpretation of a statute or rule, without the force of law. *Id.* at 96–97.

Here, Mr. Agofsky argues, and the BOP does not dispute, that 28 C.F.R. § 540.44 is a legislative rule with the force of law. *See* dkt. 33-1 at 16. Under that regulation, an inmate must have had a prior relationship with "friends and associates" for them to visit (unless an exception is approved) but "immediate family" do not have that explicit requirement. 28 C.F.R. § 540.44. Mr. Agofsky therefore argues that the BOP constructively amended 28 C.F.R. § 540.44(a) by imposing a prior-relationship requirement on his visitation request. Dkt. 33-1 at 15–22. The BOP responds that instead of revising 28 C.F.R. § 540.44(a), it only adjudicated Mr. Agofsky's specific request for his wife to visit. Dkt. 44 at 16–19.

While the BOP's responses to Mr. Agofsky referenced a prior-relationship requirement, that does not mean that the BOP constructively amended 28 C.F.R. § 540.44, triggering a need for notice-and-comment rulemaking. Mr. Agofsky provides no evidence to support his allegation that the BOP broadly applies the prior-relationship requirement to immediate family members. *See*

6

dkt. 33-1 at 12–13.[2]  In fact, the BOP's responses to Mr. Agofsky's grievance don't cite 28 C.F.R. § 540.44(a) at all—much less express a BOP-wide view that it requires a prior relationship for immediate family to visit.  *See* dkt. 6-3 at 2, 4 (unit staff and Warden response); dkt. 6-4 at 3 (regional director response); dkt. 6-5 at 7 (central office response).

Instead, in addressing Mr. Agofsky's grievance, the unit staff and Warden relied on the BOP's program statement and its Terre Haute supplement, interpreting those documents as requiring either a prior relationship or an exception from the Warden.  Dkt. 6-3 at 2, 4.  Mr. Agofsky admits that this program statement and supplement did not require notice and comment.  Dkt. 45 at 10; *Perez,* 575 U.S. at 100 (The APA's "exemption of interpretive rules from the notice-and-comment process is categorical.").  The regional director and central office then upheld the Warden's response as within his discretion.  Dkt. 6-4 at 3 ("It is within each Warden's discretion to approve or deny visitors."); dkt. 6-5 at 7 ("The approval of visiting privileges falls within the discretionary authority of the Warden.").  In other words, Mr. Agofsky has not shown that the BOP requested evidence of a prior relationship *because of* § 540.44(a).[3]

---

[2] Mr. Agofsky cites a similar lawsuit brought by fellow inmate Daniel Troya, but even if that suit can be considered in an APA challenge, it does not show that the BOP has constructively amended 28 C.F.R. § 540.44(a).  Instead, Mr. Agofsky alleges that the BOP settled that suit and allows visits between Mr. and Mrs. Troya, which the BOP presumably would not have done if it had constructively amended its binding regulation to require otherwise.  *See* dkt. 33-1 at 12–13.

[3] Because the BOP did not apply § 540.44(a) to Mr. Agofsky's visitation request, the BOP's 2003 commentary confirming that it does not impose a prior-relationship

7

The BOP thus referenced a prior-relationship requirement in its adjudicative process of resolving Mr. Agofsky's grievance even though no binding law required it. By doing so in this case—based on non-binding policy documents—the BOP acted in an adjudication rather than in rulemaking. *See Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 559 (7th Cir. 2012) ("Adjudications typically resolve disputes among specific individuals in specific cases, whereas rulemaking affects the rights of broad classes of unspecified individuals."). Such an adjudication does not require notice and comment—even if the agency applies new adjudicative principles in that proceeding. *See id.* ("[I]t is well-established that an agency is not precluded from announcing new principles in an adjudicative proceeding rather than through notice-and-comment rule-making.").

The cases that Mr. Agofsky cites do not say otherwise. In both cases he relies on, the court was considering broader guidance documents rather than a decision in a specific adjudication. *See Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014) (considering guidance letters outlining procedures for cattleherder certification and sheepherding operations); *Nat'l Family Planning & Repro. Health Ass'n v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992) (considering HHS Directives governing when doctors could counsel on abortion). Mr.

---

requirement on immediate family—something the regulation's text already made clear—does not affect this issue. *See* 68 Fed. Reg. 10656-01. When that commentary stated that "[t]he prior relationship requirement does not apply to immediate family members," the context makes clear that it's referring only to § 540.44(c)'s prior relationship requirement rather than cabining the BOP's adjudicative discretion more broadly. *See id.*

8

Agofsky therefore has not shown that the BOP constructively amended 28 C.F.R. § 540.44(a) by referencing a prior-relationship requirement in his grievance adjudication.

In short, the BOP didn't rely on 28 C.F.R. § 540.44 for a prior relationship requirement, so it couldn't have constructively amended it to impose one. And its decision to adjudicate Mr. Agofsky's grievance under the BOP's program statement and its Terre Haute supplement did not require notice and comment. *See Perez*, 575 U.S. at 100; dkt. 45 at 10. Mr. Agofsky therefore has not shown some likelihood of success on his claim that the BOP constructively amended 28 C.F.R. § 540.44 or was required to complete notice and comment rulemaking.

### B. Arbitrary or Capricious

The APA also requires that the BOP's adjudication not be arbitrary or capricious. *Abraham Lincoln Mem'l Hosp.*, 698 F.3d at 547, 554–55. This "arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *F.C.C. v. Prometheus Radio Proj.*, 592 U.S. 414, 423 (2021). "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.* "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *Id.*

Mr. Agofsky argues that the BOP acted arbitrarily and capriciously because it expanded 28 C.F.R. § 540.44(c)'s prior-relationship requirement for

9

friends and acquaintances to also apply to immediate family under 28 C.F.R. § 540.44(a). Dkt. 33-1 at 22–25. The BOP responds that it acted reasonably in adjudicating Mr. Agofsky's grievance because Mr. Agofsky's relationship with Ms. Agofsky raised potential security concerns with visits. Dkt. 44 at 21.

    Here, as explained above, the administrative record shows that the BOP did not deny Mr. Agofsky's visitation request under 28 C.F.R. § 540.44(a) but relied on its non-binding policy documents. *See* dkt. 6-3 at 2, 4; dkt. 6-4 at 3; dkt. 6-5 at 7. And while 28 C.F.R. § 540.44(a) does not impose a prior-relationship requirement on immediate family, it also does not prohibit the BOP from considering whether a prior relationship existed or whether it's verified in a Presentence Investigation Report, as the Warden did here. *See* dkt. 6-3 at 4. While the Warden referred to a prior-relationship "requirement," he expressly recognized that he could approve visits without such a relationship. *Id.* And the BOP's appeal responses confirmed the Warden's discretion to approve visits without a prior relationship after considering, for example, the "establishment of a relationship prior to incarceration, criminal history, and whether the person could present a security concern if allowed to visit." Dkt. 6-4 at 3. Mr. Agofsky therefore has not shown that the BOP arbitrarily or capriciously expanded or failed to comply with 28 C.F.R. § 540.44(a). *See ADX Commc'ns of Pensacola v. F.C.C.*, 794 F.3d 74, 82 (D.C. Cir. 2015) (Mr. Agofsky "must show" that the BOP's interpretation "is plainly erroneous or inconstant with the regulations").

10

Mr. Agofsky next argues that the BOP acted arbitrary and capriciously because it didn't follow 28 C.F.R. § 540.44(a)'s standard that immediate family will be allowed to visit "absent strong circumstances which preclude visiting." Dkt. 33-1 at 24. The deferential arbitrary and capricious standard, however, requires Mr. Agofsky to show that the BOP "fail[ed] to comply" with 28 C.F.R. § 540.44(a). *Nat'l Environ. Dev. Ass'n Clean Air Proj. v. E.P.A.*, 752 F.3d 999, 1009–11 (D.C. Cir. 2014). The administrative record shows that he's unlikely to be able to make that showing here, especially under the "substantial deference" that the BOP receives "in carrying out its statutory mandate" to regulate visitors. *Bonacci v. Transp. Security Admin.*, 909 F.3d 1155, 1161 (D.C. Cir. 2018) ("In cases of this sort, we defer to TSA actions that reasonably interpret and enforce the safety and security obligations of the agency."); *see* 18 U.S.C. § 4042(a).

Indeed, for the reasons the BOP gave in the grievance appeals process, a prior relationship is relevant to whether "strong circumstances . . . preclude visiting" under 28 C.F.R. § 540.44(a). Dkt. 6-4 at 3. While the Warden's response to Mr. Agofsky's visit request could have been clearer—particularly about the applicable standard—when read in context it's fair to conclude that his decision was based on his reasonable consideration of security concerns presented by Mr. Agofsky's request rather than rote application of the visiting regulation. Moreover, the appeal responses from the BOP's regional director and central office referenced the concerns of criminal history, "whether the person could present a security concern if allowed to visit," and "ensur[ing] the

11

security and orderly operation of the institution." Dkt. 6-4 at 3; *see* dkt. 6-5 at 7. Those responses were clear that Mr. Agofsky had not provided documentation to alleviate those concerns. Dkt. 6-3 at 4; dkt. 6-4 at 3; dkt. 6-5 at 7. On these facts, the Court cannot say that the BOP failed to act "within a zone of reasonableness." *Prometheus Radio Proj.*, 592 U.S. at 423.

Since the record demonstrates that the Warden's decision was based on the specific facts presented in Mr. Agofsky's case, Mr. Agofsky is unlikely to be able to show that the Warden's decision is reviewable under the APA. *See Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 275 (7th Cir. 2017) ("Section 701(a)(2) [of the APA] prevents review of matters committed to agency discretion by law."). Here, the ultimate visitation decision is committed to the Warden's discretion. *See* 28 C.F.R. § 540.40 ("The Warden may restrict inmate visiting when necessary to ensure the security and good order of the institution"). Courts have therefore found that similar decisions are unreviewable under the APA. *See White v. True*, No. 19-cv-418-JPG, 2020 WL 1352112 at *3 (S.D. Ill. Mar. 23, 2020) (finding "that the decision to restrict Plaintiff's mail communication with [his daughter] is not amenable to APA review"); *Sebolt v. LaRiva*, No. 2:15-cv-353-WTL-MPB, 2017 WL 2271441 at *6 (S.D. Ind. May 23, 2017) ("[F]ederal courts have held that any APA challenge to the TRULINCS [email communication system] Program Statement as 'arbitrary and capricious' is unreviewable by the Court because it falls within the BOP's broad discretionary powers to administer prisons.").

In sum, on this record, the BOP's adjudication presents "a rational connection between the facts found and the choice made." *F.E.R.C. v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016). That's enough to satisfy the APA, since arbitrary and capricious review asks "only . . . whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Sauk Prairie Conserv. Alliance v. U.S. Dept. of the Interior*, 944 F.3d 664, 670 (7th Cir. 2019); *see St. Vincent Med. Grp., Inc. v. U.S. Dept. of Justice*, 71 F.4th 1073, 1076 (7th Cir. 2023) ("The APA allows us to discard an agency's conclusion if the path it took cannot be discerned. Here the dots almost connect themselves."). Because the BOP looked to relevant factors and explained why it denied visitation, Mr. Agofsky has not shown some likelihood of showing that the decision was arbitrary or capricious.

**C. First Amendment**

The APA allows challenges to agency decisions "based on alleged constitutional violations." 5 U.S.C. § 706(2)(B); *see Munsell v. Dept. of Agriculture*, 509 F.3d 572, 589 (D.C. Cir. 2007). "Prisoners retain a limited constitutional right to intimate association" under the First Amendment, so restrictions on visits "are valid if reasonably related to legitimate penological interests." *Easterling v. Thurmer*, 880 F.3d 319, 322 (7th Cir. 2018) (quoting *Turner v. Safley*, 482 U.S. 78, 95–96 (1987)). Constitutional challenges to visitor restrictions are evaluated under the four *Turner* factors:

> (1) whether there was a rational connection between the decision to deny the marriage request and the legitimate penological interest put forward to justify the denial;

13

    (2) whether alternative means of exercising the right remained open to the plaintiffs;

    (3) what impact accommodation of the asserted right would have on guards and other inmates; and

    (4) whether obvious, easy alternatives existed to accommodate the plaintiffs' rights at de minimis cost to valid penological interests, tending to show that the denial was an exaggerated response to prison concerns.

*Nigl v. Litscher*, 940 F.3d 329, 333 (7th Cir. 2019).[4]

Mr. Agofsky argues that he's likely to succeed on this claim because Ms. Agofsky doesn't present a security threat, has no other way to visit Mr. Agofsky, and would not affect prison resources with visits. Dkt. 33-1 at 25–29. The BOP responds that Mr. Agofsky is unlikely to satisfy the *Turner* factors on his First Amendment claim. Dkt. 44 at 23.

The first *Turner* factor is dispositive here because the BOP has identified legitimate security concerns connected to its denial of visits. *Riker v. Lemmon*, 798 F.3d 546, 553 (7th Cir. 2015) ("[T]he first [factor] can act as a threshold factor regardless which way it cuts."). Mr. Agofsky has an extensive criminal history and BOP disciplinary history, and disregarded BOP policy when he married Ms. Agofsky without first seeking approval as required. *See* dkt. 15-2 at 1–4; *Nigl*, 940 F.3d at 333–36 (upholding a marriage request denial because

---

[4] The BOP argues that the *Turner* factors do not apply here because the Warden merely requested more information instead of denying Mr. Agofsky's visit request. Dkt. 44 at 22. Because the BOP finished adjudicating Mr. Agofsky's grievance and that decision is the one being challenged, at this stage the Court considers the *Turner* factors.

14

of a "pattern of rule-breaking and deception").[5] The BOP also can't run a thorough background check on Ms. Agofsky since she's not a United States citizen or resident, so it does "not know if she has any affiliations with security threat groups or national watchlists." Dkt. 44-1 at 3–6. The BOP is therefore concerned about visitation "for an improper purpose," including identification of staff and the passage of information between Mr. Agofsky and "an unknown member of a foreign community." *Id.* The Court "must accord substantial deference" to those concerns as "the professional judgment of prison administrators." *Riker*, 798 F.3d at 553. And at least at this stage, Mr. Agofsky has not "present[ed] evidence to call [those] explanation[s] into question." *Id.*

Finally, while the BOP's adjudication of the visit request at issue is complete, Mr. Agofsky has not shown at this stage that the denial of visits is permanent. *See Nigl*, 940 F.3d at 335–36. It may be that, after time, the BOP would be less concerned with Mr. Agofsky's previous policy violations, and he may be able to provide information—as the Warden has invited him to do, dkt. 43-6 at 3—showing that visits would not threaten institutional security. *See Nigl*, 940 F.3d at 335–36.

---

[5] Because the *Turner* factors require broader evidence, the First Amendment analysis is not "limited to the grounds that the agency invoked when it took the action." *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020); *see Miller v. Downey*, 915 F.3d 460, 462 (7th Cir. 2019). Indeed, both parties cite evidence outside the administrative record in evaluating the *Turner* factors. *See* dkt. 33-1 at 27–28; dkt. 44 at 23.

15

Mr. Agofsky thus has not shown some likelihood of success on his APA claim that the BOP's action violated the First Amendment.

## IV.
## Conclusion

Because Mr. Agofsky has not shown some likelihood of success on the merits justifying a preliminary injunction, the Court need not address the remaining injunction factors. *See Lukaszczyk*, 47 F.4th at 598 ("If plaintiffs fail to establish their likelihood of success on the merits, [the Court] need not address the remaining preliminary injunction factors.").[6]

The motion for preliminary injunction is therefore **DENIED**. Dkt. [33]. Magistrate Judge Klump is asked to enter a case management plan for resolving this case.

**SO ORDERED.**

Date: 5/6/2024

*[signature: James Patrick Hanlon]*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel

---

[6] Mr. Agofsky's request for oral argument is denied because he has not shown that it is necessary for resolving the motion for preliminary injunction. *See* dkt. 41.